Matter of Figueroa v Consolidated Edison Co. of N.Y., Inc. (2019 NY Slip Op 00652)





Matter of Figueroa v Consolidated Edison Co. of N.Y., Inc.


2019 NY Slip Op 00652


Decided on January 31, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 31, 2019

526574

[*1]In the Matter of the Claim of YVONNE FIGUEROA, Claimant,
v
CONSOLIDATED EDISON CO. OF N.Y., INC., et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: January 16, 2019

Before: Garry, P.J., Clark, Mulvey, Aarons and Rumsey, JJ.


Cherry, Edson & Kelly, LLP, Tarrytown (Ralph E. Magnetti of counsel), for appellants.
Letitia James, Attorney General, New York City (Donya Fernandez of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed July 12, 2017, which ruled, among other things, that claimant was entitled to wage replacement benefits from October 23, 2015 through December 10, 2015 due to her reattachment to the labor market.
Claimant worked for the employer as an office assistant for approximately 41 years and her duties primarily involved typing and filing. She began to experience pain in her hands and wrists while performing these duties and, in May 2012, filed a claim for workers' compensation benefits. Shortly thereafter, on June 1, 2012, she retired from her position at the age of 59.
In February 2014, a Workers' Compensation Law Judge (hereinafter WCLJ) established claimant's claim for a causally-related occupational disease involving bilateral carpal tunnel syndrome and awarded her benefits. The self-insured employer and its third-party administrator (hereinafter collectively referred to as the employer) appealed, contending, among other things, that the WCLJ should not have made awards without addressing the issues of voluntary retirement and withdrawal from the labor market. The Workers' Compensation Board modified the WCLJ's decision and directed that the case be restored to the trial calendar for further development of the record on these issues.
In October 2015, claimant began efforts to reenter the workforce, but failed to secure a job. Further proceedings were conducted in her workers' compensation case and, following a December 2015 hearing, the WCLJ issued a decision finding that claimant's retirement was [*2]voluntary [FN1]. At this hearing, the employer raised the issue of whether claimant violated Workers' Compensation Law § 114-a (1), potentially disqualifying her from receiving benefits. The WCLJ continued the case to address claimant's loss of wage-earning capacity and labor market reattachment. Following a subsequent hearing, the WCLJ issued a January 2016 decision finding that claimant had a permanent partial disability due to her bilateral carpal tunnel syndrome with a loss of wage-earning capacity of 33.3% and had demonstrated good faith efforts to reattach to the labor market within her causally-related medical restrictions. The WCLJ held awards in abeyance pending further proceedings on the employer's Workers' Compensation Law § 114-a (1) claim. After reviewing the record, the WCLJ issued a May 2016 decision finding, among other things, that claimant did not violate Workers' Compensation Law § 114-a (1) and was entitled to receive benefits at the permanent partial disability rate of $390.01 per week from October 23, 2015 forward.[FN2]
Thereafter, the employer sought Board review of the WCLJ's January 2016, May 2016 and June 2016 decisions. A panel of the Board issued a split decision in which the majority concluded, among other things, that (1) claimant's June 2012 retirement was voluntary and unrelated to her disability, rendering it unnecessary to consider whether she reattached to the labor market, and (2) claimant violated Workers' Compensation Law § 114-a (1) by knowingly misrepresenting the reasons for her retirement, thereby disqualifying her from receiving benefits. In view of this, the Board panel majority modified the WCLJ's decisions and rescinded the awards made from October 23, 2015 through December 10, 2015. One Board member dissented, finding that (1) claimant's June 2012 withdrawal from the labor market was an involuntary retirement, (2) claimant did not misrepresent the reasons for her retirement in violation of Workers' Compensation Law § 114-a (1), and (3) claimant demonstrated labor market reattachment from October 23, 2015 through December 10, 2015 and was entitled to receive benefits during this period.
Claimant, in turn, sought mandatory full Board review of the Board panel's decision. The full Board issued a decision ruling, among other things, that claimant was not disqualified from receiving benefits based upon a violation of Workers' Compensation Law § 114-a (1), and she had demonstrated reattachment to the labor market from October 23, 2015 through December 10, 2015 entitling her to receive wage replacement benefits during this time period. The full Board specifically declined to review the uncontested finding previously made by the WCLJ that claimant's retirement was voluntary. The employer now appeals.
The employer challenges the Board's award of benefits to claimant during the time period that it found she had reattached to the labor market. Specifically, the employer asserts that claimant failed to meet her burden of demonstrating that her inability to obtain work after she sought to reenter the workforce was due to her causally-related disability, as opposed to her age, economic conditions or other factors.
As we have repeatedly held, where a claimant has voluntarily retired, but claims to have later reattached to the labor market, he or she "must demonstrate that his or her 'earning capacity and his [or her] ability to find comparable employment had been adversely affected by his [or her] disability'" (Matter of Pontillo v Consolidated Edison of N.Y., Inc., 156 AD3d 1064, 1065 [2017], quoting Matter of Smith v Consolidated Edison Co. of N.Y., Inc., 68 AD3d 1299, 1300 [2009]; see Matter of Tawil v Fallsburg Cent. School Dist., 106 AD3d 1314, 1315 [2013]; Matter of Balint v NYS Dept. of Corrections, 79 AD3d 1570, 1571 [2010])[FN3]. More particularly, "[t]his [*3]burden requires a claimant to demonstrate 'that other factors totally unrelated to his [or her] disability did not [cause the] adverse affect on his [or her] earning capacity'" (Matter of Pontillo v Consolidated Edison of N.Y., Inc., 156 AD3d at 1065, quoting Matter of Smith v Consolidated Edison Co. of N.Y., Inc., 68 AD3d at 1301).
Claimant testified that, in October 2015, after not working for three years, she went to One Stop Employment Center where she attended an orientation session and took classes on preparing a résumé and cover letter to learn skills to assist her in finding a job. She submitted job applications to various retail companies, including Macy's, JC Penney, Dress Barn and Target, as well as a real estate agency known as Master Key. She stated that she applied for jobs within her medical restrictions involving duties such as answering the telephone, assisting customers and minimal typing and/or filing. Claimant was not successful in obtaining any of these jobs and her only explanation was that they had already been filled. Notwithstanding the evidence indicating that claimant had reattached to the labor market through her contact with One Stop and submission of job applications to various prospective employers, the record fails to contain any evidence establishing that claimant's disability was a factor in her inability to secure employment. Given claimant's failure to meet her burden in this regard, we conclude that the full Board's decision to award claimant wage replacement benefits during the period of her labor market reattachment is not supported by substantial evidence and such awards must be rescinded (see Matter of Smith v Consolidated Edison Co. of N.Y., 68 AD3d at 1301; see also Matter of Tawil v Fallsburg Cent. School Dist., 106 AD3d at 1315-1316; Matter of Balint v NYS Dept. of Corrections, 79 AD3d at 1571; compare Matter of Cole v Consolidated Edison Co. of N.Y., Inc., 125 AD3d 1084, 1085 [2015]; Matter of Turetzky-Santaniello v Vassar Bros. Hosp., 302 AD2d 706, 707-708 [2003]). In view of our disposition, we need not address the employer's remaining argument.
Garry, P.J., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as awarded claimant wage replacement benefits from October 23, 2015 through December 10, 2015; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: No appeal was taken from this decision.

Footnote 2: The WCLJ issued an amended decision in June 2016 that is substantively identical to the May 2016 decision.

Footnote 3: Inasmuch as no appeal was taken from the WCLJ's decision finding that claimant's retirement was voluntary, that finding remains in effect (see generally Matter of Wallace v YMCA of Chemung County, 8 AD3d 912, 913 [2004], lv dismissed and denied 4 NY3d 739 [2004], cert denied 544 US 965 [2005]; Matter of Weingarten v Pathmark Stores, 256 AD2d 648, 649-650 [1998]).